NATHANIEL BUCKMASTER, for the use of George W. Denham, plaintiff in error, *v.* MANNING BEAMES *et al.*, defendants in error.

· *Error to Madison.*

A suit upon a replevin bond was brought in the name of the sheriff for the use of one of the parties in interest, and the defendant demurred: *Held*, that the nominal plaintiff was the only one of whom the Court would take notice, and the fact of one of several parties interested having brought a suit in the name of the sheriff, could not be questioned by a demurrer.

To an action upon a replevin bond, it was pleaded that after the plaintiff in the replevin suit had commenced his suit and before the trial thereof, one of the defendants in that suit had carried away the property replevied and had converted it to his own use: *Held*, that if such was the fact, a return of the property should have been pleaded in the replevin suit, and the Court would not have awarded a writ of *retorno habendo*.

Pleas purporting to answer the whole declaration, and which answer but a part, are bad.

The proper practice in regard to exceptions, is, to make them upon the trial and to file a bill of the same at that term. The Court, however, may in its discretion, permit the bill to be filed at the next term, but the practice is not commendable.

DEBT upon a replevin bond, in the Madison Circuit Court, brought by the plaintiff in error against the defendants in error, and heard before the Hon. James Semple and a jury, at the May term 1843. Verdict and judgment for the defendants.

The pleadings and evidence are stated by the Court.

---

---

*L. Trumbull,* for the plaintiff in error.

*J. Gillespie,* and *A. T. Bledsoe,* for the defendants in error.

The Opinion of the Court was delivered by

Koerner, J.* This was an action of *debt,* brought by N. Buckmaster, late sheriff of Madison county, for the use of Denham, at the May term 1842, of the Madison Circuit Court, against Beames and Arthur, on a replevin bond, executed by defendants to said sheriff, on commencing an action of replevin against said Denham and two others, James K. Osborn and William Brady. In this replevin suit Beames had been nonsuited, and a writ *de retorno habendo* had been awarded, which writ had been returned by the said sheriff, that the said Beames had refused to re-deliver the property, and that he had not been able to find it.

The breaches assigned in the declaration are, that Beames did not prosecute his suit with effect; that he did not pay the costs and condemnation money, and that he did not return the property replevied by him to the sheriff, present plaintiff, nor to any of the owners of the property, the defendants in the replevin suit.

It has been contended in the argument that this declaration is bad, inasmuch as it is brought for the use of but one of the defendants in the replevin suit, while it ought to have been for the use of all. We cannot see the force of this objection. Buckmaster is the only plaintiff in this record, of whom notice can be taken, and the propriety of but one of the parties beneficially interested in the performance of the conditions of this bond, using the name of the sheriff for the purposes of this action, cannot be questioned by a demurrer.

The pleadings subsequent to the declaration, are of the most multifarious and confused character, making it difficult indeed to state them intelligibly. An effort seems to have been made in the Court below to involve the case, in utter

---

*Thomas, J. having been of counsel in this case, did not sit at the hearing.

obscurity, for the purpose perhaps of gaining an advantage in pleading, which the merits of the case failed to afford. We cannot but express our disapprobation of such a practice, so little calculated to obtain the ends of justice, and most generally detrimental to the very party which is intended to be protected by this species of pleading.

The first plea interposed by defendants, avers that Osborn, one of the defendants in the replevin case, had, since the last continuance of the present suit, released defendant Beames, (to the extent of said Osborn's interest,) from all liability on said replevin bond. This plea, being one of *puis darrein continuance,* was defective in form, and being pleaded as a plea in bar, defective in substance. It averred a release made by one alone of three persons beneficially interested, by one who was no party to the record in any respect, and executed to one only of two defendants, equally liable. The plaintiff filed a demurrer to this plea, but the record does not show that the Court ever gave a decision on its validity, and the plaintiff appears to have waived his objection by filing subsequently *two* replications to this plea, alleging in the first that said Osborn had no interest in the suit, (which the pleadings had already sufficiently shown,) and in the second, that the said release was executed by fraud and collusion. The defendants never took issue on these replications, and they seem to have been forgotten in the further progress of the suit. The second plea of defendants, alleges that Beames, one of the defendants, was the owner of the property claimed by him in the replevin suit, and which the Court had ordered him to return.

The third plea avers, that Denham never was the sole owner of said property.

The fourth plea sets forth, that Denham, Osborn and Brady never were the sole owners. The Court very properly sustained a demurrer to each of these last pleas.

The fifth plea alleges, that after Beames had commenced his replevin suit, and before the trial thereof, Denham had carried away the property so replevied, and had converted it to his own use.

This plea was defective. If Denham, one of the persons
out of whose possession the property had been replevied,
had, before the trial, re-taken it, Beames could have shown
this on the trial of said replevin suit, and the writ *de retorno
habendo* would not have been granted, or he might have sued
Denham for the trespass. But this is a suit on the bond,
wherein Beames and Arthur have bound themselves to abide
the judgment in the suit they were then commencing, and
return the property, and they must comply with their obli-
gations. Be this, however, as it may, the proper plea to make
these facts available, would have been one alleging a return
of the property. This plea was also bad in another respect,
as it professed to answer the whole declaration, while it in
fact answered but one of the breaches.

The plaintiff, nevertheless, took issue on this plea, as also
on the sixth, which averred that Beames paid the costs and
condemnation money, and which was also bad, it being an
answer to but one of the breaches, while purporting to an-
swer the whole declaration.

The seventh plea alleges, that Beames paid Brady, who is
no party to this suit, nor the obligee in the bond, the penalty
of the bond; on this plea, which we consider also as defec-
tive, the plaintiff took issue.

The eighth plea is *non est factum,* concluding to the coun-
try, to which the plaintiff replied, also concluding to the
country. The defendants joined issue on the replications to
the fifth, sixth and eighth pleas, but not on the replication to
the seventh plea. There was a demurrer to one of the plain-
tiff's replications to the defendant's plea of release, but to
which one the record does not inform us, nor does it appear
what became of it. There is also an order in the record,
showing that the Court overruled a demurrer to defendant's
last plea, but as the last plea thus far pleaded, was the gen-
eral issue, this decision must have applied to some other
plea, but to which one we cannot possibly determine. Some
of these pleadings were filed at the September term 1842,
and at the May term 1843, the defendant filed another plea,
(not numbered,) which alleges that Beames was the *bona*

*fide* owner of the property replevied, and that he did pay all the costs and condemnation money adjudged against him, and that the plaintiff had sustained no damage. This plea, as defective as any of the rest, was replied to, the replicacation traversing, 1st, the allegation that Beames was *bona fide* owner; 2d, that plaintiff had sustained no damage, and leaving the averment that Beames had paid the costs and condemnation money unanswered; it alleged that defendant had not paid the sum of money in said bond mentioned. The defendants joined issue on this replication, but made subsequently a motion to strike out the last allegation in the replication, it being a departure from their plea, of which motion no disposition seems to have been made.

This being the situation of the case, the issues, such as they were, were submitted to the jury, who found a verdict for the defendants on all the issues, whereupon the plaintiff's counsel entered a motion for a new trial and a re-pleader, which motions were overruled, and judgment was entered for defendants.

The errors assigned are as numerous as the pleadings to the case:

1st. That under the issues joined, the Court permitted defendants to read in evidence to the jury, an assignment of a bond or contract for land from one J. H. Osborn to one Cameron, and from Cameron to Beames.

2d. Because after reading said bond, the Court would not permit plaintiff to ask witness Osborn, if he assigned said bond to Cameron.

3d. Because the Court allowed defendants to read in evidence a pretended release of the property replevied by one Cameron, of date 31st October, 1836.

4th. Because the Court refused to allow plaintiff to prove to the jury, that the pretended assignment read in evidence, did not include, and was not intended to include the wood and coal.

5th. Because the Court refused evidence offered by the plaintiff pertinent to the issue.

6th. Because the Court admitted illegal testimony to go the jury on part of defendant.

7th. Because the Court rejected the first, third and sixth instructions to the jury, asked for by plaintiff.

8th. Because the Court admitted and gave to the jury the instructions asked for by the defendants' counsel and excepted to by plaintiff's counsel.

9th. Because the Court gave the instructions asked for by the defendants, and refused to give those asked by plaintiff.

10th. Because the Court refused to grant a new trial.

11th. Because the issue presented by the fourth plea of defendants, was an immaterial issue, and did not determine the merits of the action.

The bill of exceptions, after reciting the testimony of one or two witnesses, and also that certain title papers were introduced, which are set out at length, states that no other witnesses were examined. It also embodies various instructions, given or refused to be given by the Court, and sets out what objections were made by plaintiff during the progress of the trial. This bill was filed at the succeeding November term, (a practice which we do not commend, but which the Court had discretion to tolerate,) and is very inartificially drawn. After setting forth the decision of the Court on many of the points, of which the party now complains, it goes on to state in the present tense, "to all of which decisions of the Court the plaintiff excepts." From this mode of expression we cannot understand, that the exceptions were made upon the trial, which must be done in order to make the decisions of the Circuit Court revisable here. This is expressly decided in *Gibbons* v. *Johnson,* 3 Scam. 63, where many decisions on the same point are referred to in the Opinion of the Court. By the application of this long settled rule, it appears by a careful examination of the bill of exceptions, that this Court cannot look into the alleged errors, embraced by the fourth, fifth, seventh, eighth, ninth, tenth and eleventh assignments of error. The second and third assignments have no foundation at all in the record, as the bill of exceptions does not show, that either such a release as is spoken of in the third assignment was produced, nor such a question as the one mentioned in the second was ever asked. The first and sixth assignments are one and the

same, and the only ones which we can notice, the bill stating that the plaintiff *excepted* to the introduction of the said papers. This assignment of error questions the correctness of the decision of the Court, in permitting defendants to read in evidence a certain paper executed by one Osborn to one Cameron, purporting to convey forty acres of land, described as the land on which Osborn lives, and also the possession thereof, and his interest in the coaling thereon; and a similar paper from Cameron to Beames, conveying to the latter the same indefinite interest, together with one hundred and eighty six cords of wood, and one pit of charcoal.

It is proper to remark here, that the property originally in dispute in the replevin suit was a pit of charcoal and a lot of cord wood, and if the legitimate question in the present case had been the right of property in the articles formerly replevied by Beames, this testimony, vague as it was, might have had a tendency to show property in Beames. But as before remarked, this issue, though raised by the parties by the additional plea last filed, and which in the assignment of errors by mistake, is designated as the fourth, was wholly irrelevant and immaterial, and the Court for that reason ought to have excluded the testimony.

It is insisted, however, that because the plea of *non est factum* was interposed, and a verdict found for defendant on all the issues, this judgment must stand, since the jury may have found on that good issue. The whole record of the case forbids us to indulge in this presumption. All the evidence which we find incorporated in the bill of exceptions, and the instructions asked for as well by plaintiff as by defendant, (and for the purpose of ascertaining the true point of contest in the case, this Court may treat the instructions as properly before it,) make it manifest, that the parties made their whole case turn on the question as to whether Beames was the owner of said property or not. The bill of exceptions does not show that the replevin bond was in testimony, but it does not give all the evidence, but only so much as the plaintiff thought necessary to exhibit the alleged errors of the Court. It cannot be supposed, however, that the de-

Buckmaster *v.* Beames *et al.*

fendants' counsel would ever have gone into proof of his defence, if plaintiff's counsel had failed to show his bond, the ground work of his action, and the only point he had to prove. Nor can it be presumed that the Court would have permitted such an idle waste of time. The bond evidently formed no point of dispute between the parties in the Court below, and it would not be reconcilable with the administration of substantial justice, for this Court to shut its eyes to everything which transpired between the parties on the trial, and to raise presumptions in favor of verdicts on the most far-fetched and improbable hypothesis. *Hill* v. *Ward*, 2 Gilm. 285.

We are of opinion that the merits in this case have never been tried, and that the judgment be reversed, and a *venire de novo* awarded, for the purpose of trying the cause on the issue of *non est factum*, or such other issue as the Court below may allow in its discretion to be made up.

The costs in this suit to be paid by the defendants in error.*

*Judgment reversed.*

---

*This cause was argued and decided at the December term 1845, at which term a re-hearing was granted. It was re-argued at the present term and the former decision affirmed.